FILED

2009 Dec-03  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **MAVERICK ENTERPRISES, LLC, an** | ] | |
| **Alabama Limited Liability Company;** | ] | |
| **and KENNETH CARTER, an individual** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | **CV-09-BE-1084-S** |
| **v.** | ] | |
| | ] | |
| **THE CITY OF ALABASTER, a** | ] | |
| **Municipal corporation, and DAVID** | ] | |
| **FRINGS, and JERRY WORKMAN,** | ] | |
| **individuals,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on "Motion to Dismiss First Amended Complaint" (doc.

12) with a supporting brief (doc. 12-2) filed by the remaining Defendants, The City of Alabaster

and Mayor David Frings.  Defendants argue that none of the four counts in the First Amended

Complaint states a viable claim. Further, Defendant Frings argues that the claims against him in

his official capacity should be dismissed as redundant of claims against the city, and that the

claims against him in his individual capacity do not meet pleading standards and are due to be

dismissed because of his entitlement to qualified immunity.  Plaintiffs responded with an

opposition brief (doc. 15-2) and Defendants replied (doc. 18).  For the reasons stated in this

opinion, the court will GRANT the motion to dismiss in part and DENY it in part: granting the

motion with respect to the entirety of Counts One, Two, and Four, and to Count Three's equal

protection claims against Defendant Frings; and denying the motion with respect to Count

1

Three's equal protection claims against the City of Alabaster.

## I.  PROCEDURAL HISTORY

On June 1, 2009, Plaintiffs Maverick Enterprises and Kenneth Carter filed a Complaint against Defendants the City of Alabaster, Mayor David Frings, and Jerry Workman, a member of the Alabaster City Council.  Defendants filed motions to dismiss and, before those motions were under submission, Plaintiffs requested and received the court's permission to amend their Complaint.

Within the time allowed by the court, Plaintiffs filed the First Amended Complaint (doc. 14).  It contains four counts: Count One - Defendants' denial of  Plaintiffs' rights to substantive due process under the Fourteenth Amendment brought pursuant to § 1983 ; Count Two - Defendants' denial of Plaintiffs' rights to procedural due process (presumably under the due process clause of the Fourteenth Amendment, brought pursuant to § 1983 ); Count Three - Defendants' denial of Plaintiffs' rights to equal protection under the Fourteenth Amendment, brought pursuant to § 1983 ; and Count Four - against Frings, individually and in his official capacity, alleging in pertinent part that he  "deprived Plaintiffs of their protected constitutional rights" and "formulated a public policy on behalf of the City of Alabaster [targeting] Plaintiffs . . . for discrimination and deprivation of their civil and constitutional rights."   (Amend. Compl. doc. 14 ¶ ¶ 72 & 73).   Count Four is presumably also brought pursuant to § 1983.  The first three counts purport to assert claims against all Defendants and the last count purports to assert a claim against individual Defendants "Frings, Workman, and others whose names are unknown to the Plaintiff at the present time. . . ."  (Amend. Compl. doc. 14 ¶ 72).

The City of Alabaster and Frings then filed the motion to dismiss currently before this

court.  Workman filed a separate motion to dismiss.  The court subsequently received a Stipulation of Dismissal (doc. 21) signed by Plaintiffs' counsel, asking the court to dismiss Defendant Workman with prejudice, and the court did so (doc. 22).  Accordingly, the only motion currently pending before the court is the motion to dismiss the First Amended Complaint, filed by Defendants Frings and the City of Alabaster.

## II.  FACTUAL ALLEGATIONS

At the motion to dismiss stage, the allegations of the complaint must be taken as true. *Lotierno v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002).  The court accepts as true the following facts from the First Amended Complaint.

Plaintiff Maverick Enterprises, L.L.C. is a company formed under the laws of the State of Alabama with its principal place of business in Shelby County, Alabama.  Plaintiff Kenneth Carter is a resident of Shelby County, Alabama, and is presumably an officer of Maverick, although the Amended Complaint does not specifically state his position.

On July 18, 2003, in a document signed by Frings, the City of Alabaster approved the subdivision of a tract of land within the city limits, dividing the property into two lots (Lot 1 and Lot 2) with one entrance/exit.  In September of 2003, the subdivision map was recorded.  The eventual owner of the property, Swift Creek Development, L.L.C., approached Carter about developing an apartment project on the property.  On April 13, 2005, Carter applied for a re-zoning of the property for a multi-family development containing 375 apartment units.  On that same date, Carter submitted plans to the City's engineers, who approved them on April 19, 2005 for a grading permit.

On May 24, 2005, the City's Planning & Zoning Board held a public hearing on Carter's

zoning application.  The Board recommended that Lot 1 be re-zoned to B-3, which would allow commercial development.  It further recommended that Lot 2 be re-zoned to R-6, which would allow development for multi-family development with 375 apartment units.

On July 18, 2005, the City Council sent the zoning recommendations for Lots 1 and 2 back to the Board, but the First Amended Complaint does not explain the basis for the action. On November 22, 2005, the Board recommended that the City adopt as part of its zoning ordinance a new zoning classification known as the "Peavine Creek Overlay District."  On January 3, 2006, the City Council adopted the recommended changes to the zoning ordinance, and thereafter, the Council approved Lot 1's re-zoning  as B-4, which allowed commercial use, and Lot 2's re-zoning as R-6, permitting multi-family use; however, the Council conditioned its approval upon Plaintiff's reduction of the maximum number of apartment units on the property to 276.  *Plaintiffs identify this re-zoning approval, conditioned upon a reduction in dwelling units, as the first violation of their constitutional rights*.  On May 26, 2006, the City's Zoning Coordinator confirmed in writing the January 3, 2006 decision of the City Council, enclosing subdivision regulations applicable to apartments and condominiums.  The subdivision regulations did not require two access roads to the property.

After the approval of the re-zoning of Lots 1 and 2, Carter hired engineers to prepare plans for the development of the property, and arranged for a bank loan to obtain money to purchase and develop the property.  On July 24, 2007, Carter closed on a loan and purchased the property for $2,050,000 in the name of Maverick Enterprises, L.L.C.

On December 4, 2007, Plaintiffs submitted to the City detailed plans for the development of Lots 1 and 2, and the City issued grading permit for both lots.  Plaintiffs spent at least

4

$300,000 to grade Lot 1 and the access road to the property.

By 2008, Plaintiffs' plans for Lot 2 called for a condominium project instead of an apartment project. On May 1, 2008, the City Planner, unaware that a subdivision of the property had been approved and recorded in 2003, demanded that the Plaintiffs submit another subdivision map for approval under the City's subdivision regulations. *Plaintiffs identify this demand for a second subdivision map as a second violation of their constitutional rights*. They claim that, contrary to the City Planner's assertion, the City's subdivision regulations were not applicable to a condominium development with no public roads, and thus, no subdivision map was required. In any case, the City had already approved the subdivision of the property in 2003. The First Amended Complaint does not specifically state that Plaintiffs prepared and submitted this second subdivision map, but their brief states that Plaintiffs did so and paid thousands of dollars for the second map.

On May 5, 2008, the City's fire official wrote the Zoning Coordinator and approved the proposed subdivision with certain minor revisions. The minor revisions did not involve a second access road for the property. On or about May 6, 2008, Plaintiffs filed a request for subdivision approval, and the City's Planning & Zoning Board set the request for a hearing.

On or about May 15, 2008, the City's engineer wrote a letter to the Zoning Coordinator and recommended approval and on that same day, the City demanded, for the first time, that the subdivision map include two access roads. However, on May 23, 2008, the City's fire official wrote the Zoning Coordinator a second letter about the property in question, confirming that while he would like to see the final plans, "all is approved as submitted." This second approval letter from the fire official did not mention the need for a second access road.

5

On May 25, 2008, two days before the scheduled hearing before the Planning and Zoning Board, Carter and his attorney attended a meeting with the City Planner and other City officials. After reviewing the plans for the property in question, the City requested the following plan changes/submissions by July 3, 2008:  that one area of the parking lot be changed to green space, that the garages be faced with bricks three feet high; and that architectural drawings of the proposed buildings be submitted with three color schemes each.  The First Amended Complaint states that Carter was told at that meeting that if he would comply with the requests "[h]e would be good to go," but the First Amended Complaint does not specify who made that statement.  At this meeting, the City representatives did not mention the need for two access roads.

On May 27, 2008, the Planning and Zoning Board held a hearing and called the case of the property in question; however, at the hearing, Plaintiffs requested that the matter be removed from the agenda because they had been advised that they must submit a "narrative fully describing the character and intended uses of the land areas proposed for development and how the proposed development plan is consistent with the intent of the PCO [Peavine Creek Overlay] district." (Amend. Compl. doc. 14, ¶ 36, at 7-8).  Plaintiffs were also advised to amend their plans to show that Lot 2 was to contain a condominium project instead of an apartment project. The First Amended Complaint does not state who so advised Plaintiffs or when they received the advice.

On June 17, 2008, the City Planner wrote to the Plaintiffs and acknowledged that the City's subdivision regulations were not applicable to Lot 2 of their project.  However, he stated that Plaintiffs' plans for Lot 2 had to be approved by the "approving authority," which was the Planning and Zoning Board.  (Amend. Compl. doc. 14 ¶ 40, at 8-9).  As support for this

requirement, he referred to the ordinance's reference to the "approving authority" establishing setbacks; however, the Lot 2 setbacks had already been approved. *Plaintiffs identify this "arbitrarily imposed" requirement that Lot 2 plans be approved by the "approving authority" as the third violation of their constitutional rights.* Although the First Amended Complaint states that the City Planner told Plaintiffs about the need for Board approval of Lot 2 plans "for the first time" on June 17, 2008, it does not clarify why this approval is different from Plaintiffs' May 6 request to that same Board for subdivision approval. On this same date, Plaintiffs were told – but the First Amended Complaint does not state who told them – that their plans would not be approved if they called for more than 200 dwelling units. *Plaintiffs identify this requirement that the dwelling units be further reduced to a number at or around 200 as the fourth violation of their Constitutional rights.* After being told of this requirement, Plaintiffs amended their plans to reflect a total of 198 units.

On or before July 3, 2008, Plaintiffs complied with the City's requests communicated at the May 25, 2008 meeting by changing the plans to convert one area of the parking lot to green space and to face garages with brick, and by submitting architectural drawing with three color schemes. On July 18, 2008, Mayor Frings called a meeting with certain City officials and stated the meeting's purpose was to find a way to stop Plaintiffs' development.

On July 22, 2008, the City's Planning and Zoning Board held a public meeting with the stated purpose of "Architectural review" and Plaintiffs attended to request architectural review of their property plans. At the hearing, the Board did not conduct an architectural review of the Plaintiffs' plans. Instead, despite the fire official's approval of Plaintiffs' subdivision plans in May of 2008 with no mention of fire code restrictions or additional access roads, the Board

determined that certain fire code restrictions applied to Plaintiffs' project and interpreted those restrictions to require two access roads to Plaintiffs' property.   Plaintiffs assert that the Board raised and applied these fire code provisions "for the first time in the City's history" (Amend. Compl. doc. 14 ¶ 46).  The Board tabled the matter, and *Plaintiffs identify the application of the fire codes to their project and resulting tabling of their request as the fifth violation of their constitutional rights*.  Since that meeting, the Board has taken no further action on Plaintiffs' request for subdivision approval.

Plaintiffs waited thirty days after the July 2008 hearing, understanding that the Board had thirty days to act on the request for subdivision approval and that if no action were taken within that time, the plans would be deemed to be approved as a matter of law under Ala. Code § 11-52-32.  Having received no notice of any Board action, the Plaintiffs understood that their plans were approved.  They applied for a building permit from the City, submitting all required documents. Plaintiffs repeatedly asked the City about the status of the permit during the next four months or so, but the City did not issue it.  *Plaintiffs identify the City's undue delay in issuing the building permit as the sixth violation of their Constitutional rights*.

Finally, on April 21, 2009, Plaintiffs withdrew their request for a building permit.  They indicate that the withdrawal was a recognition that the request was futile, as the City had no intention to issue it, and further, that the City's reduction of the number of dwelling units rendered the project infeasible.

Plaintiffs identify as a comparator another apartment project, located less than half a mile from Plaintiffs' property on the same road.   This project called for 326 apartment dwelling units, and the City approved the project without applying the same requirements or convoluted approval

8

process.  Further, Plaintiffs assert that the City has never applied the fire code restrictions, interpreted as requiring two access roads, to any other project in the City.   As a result of the various alleged Constitutional violations, Plaintiffs claim that they incurred attorneys' fees and suffered damages: lost profits, reduction in and/or loss of the value of property, lost financing, and out-of-pocket expenses.

### III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal* ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained in *Twombly* that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ]

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified in *Iqbal* "two working principles" for the district court to use in applying *Twombly's* facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does have to not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to the task of determining the claim's plausibility given the well-pleaded facts. That task is "context-specific" and must permit the court, based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

As discussed later in this opinion, pleading standards increase in the Eleventh Circuit where a plaintiff asserts a claim under 42 U.S.C. § 1983, and a defendant raises his entitlement to qualified immunity. *See Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009).

To satisfy the heightened pleading requirement, a plaintiff must plead only "'some factual detail' from which the court may determine whether Defendants' alleged actions violated a clearly established constitutional right." *Id.* at 1180.  The complaint should specify "what alleged rights were violated," "which of [the defendant's] actions allegedly violated those rights" and provide enough information for the court to determine "whether those rights were clearly established when the[] incidents occurred." *Id.*

### IV.  DISCUSSION

Plaintiffs' case is based upon unsuccessful attempts to obtain approval from various entities of the City of Alabaster, including its Planning and Zoning Board, to develop a commercial project.  Having failed to obtain that approval, Plaintiffs bring this case under Section 1983, claiming violations of their constitutional rights[1].  At the outset, the court is mindful that "zoning decisions, as a general rule, will not usually be found by a federal court to implicate constitutional guarantees" and further, that federal courts are "[disinclined] to sit as a zoning board of review."  *Greenbriar Village, L.L.C. v. Mountain Brook*, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).

**A.  Substantive Due Process**

In the instant case, Plaintiffs assert that Defendants' response to their application for

---

[1]In Plaintiffs' Brief, under Section II. and the "Applicable Law" section, Plaintiffs indicate that they are asserting Fifth Amendment claims; however, the First Amended Complaint does not specifically mention the Fifth Amendment.  It does assert the violation of the right to equal protection and the right not to be deprived of property without due process of law under the Fourteenth Amendment.  To the extent that Plaintiffs are asserting any claims under the Fifth Amendment *except* the right to equal protection and the right not to be deprived of property without due process of law, which this court addresses in this opinion, the court finds that those claims are due to be dismissed. *See Twombly*, 550 U.S. at 555.

approval of subdivision plans and their application for a building permit violated Plaintiffs'

substantive due process rights.  Defendants argue that the substantive due process claims should

be dismissed because the Defendants' acts are executive acts, not legislative ones, and thus, can

violate only procedural due process rights, not substantive due process rights.

"The substantive component of the Due Process Clause protects those rights that are

fundamental, that is, rights that are implicit in the concept of ordered liberty." *Greenbriar*, 345

F.3d at 1262-63 (quoting *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)

(internal quotations omitted)).  Rights that are fundamental are those created by the United States

Constitution.  *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 959 & n. 6 (11th Cir. 1997).

Property interests, on the other hand, are not created by the Constitution, but rather, "are created

and their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see*

*also Greenbriar*, 345 F.3d at 1262 ("to the extent that Greenbrier predicates its substantive due

process claim directly on the denial of its state-granted and -defined property right in the permit,

no substantive due process claim is viable.") The Eleventh Circuit has stated that "[a]cts of zoning

enforcement rather than rulemaking are not legislative."  *Crymes*, 923 F.2d at 1485 (citing *Front*

*Royal & Warren Count Indus. Park Corp. v. Front Royal*, 865 F.2d 77, 79 (4th Cir. 1989)); *see*

*also DeKalb Stone*, 106 F.3d at 959 ("enforcement of existing zoning regulations is an executive,

not legislative, act").

Similarly, a district court in our Circuit has applied that dichotomy to fire code

enforcement.  *Wohl v. City of Hollywood*, 915 F. Supp. 339, 343 (S.D. Fla. 1995).  In that case,

the court granted defendants' motions for summary judgment on § 1983 claims implicating

qualified immunity, finding that the defendants' application of the fire code policy to plaintiff's property was not a legislative act and did not violate his substantive due process rights. *Id.* Whether a decision is legislative or administrative is a "pure question of law." *Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995).

In the instant case, Plaintiffs identify six actions of Defendants that allegedly violated their constitutional rights: (1) the City Council's conditioning of the January 2006 approval of Plaintiffs' application for re-zoning of Lots 1 & 2 on a reduction in the number of dwelling units to 276; (2) the City Planner's demanding on May 1, 2008 a second subdivision map for approval under the City's subdivision regulations; (3) the City Planner's imposing a requirement in June 2008 that Lot 2 plans be approved by the "approving authority;" (4) requiring in June 2008 that dwelling units be further reduced to a number at or around 200; (5) the City Planning and Zoning Board's setting a hearing on July 22, 2008 for an "architectural review" of Plaintiffs' plans that was not required and tabling Plaintiffs' request for project approval because of certain fire code restrictions that had not been applied to any other projects; and  (6) the City's refusing to issue a building permit by unduly delaying their application.

These actions all involve decisions on state-created and state-defined property rights: a re-zoning application and application for building permit and related density decisions.  The court finds that these decisions involve applying and enforcing ordinances, fire codes, etc. to a specific property/project and are executive, not legislative acts; thus, to the extent Plaintiffs predicate their substantive due process claims on those executive acts affecting state-created rights, they do not have a viable substantive due process right. *See Greenbriar*, 345 F.3d at 1262; *Crymes*, 923 F.2d at 1485; *Wohl*, 915 F. Supp. at 343.

13

Plaintiffs content that Defendants' actions were unconstitutionally irrational and arbitrary. However, the Eleventh Circuit has held that "non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irrationally." *Greenbriar,* 345 F.3d at 1263.

Accordingly, the court finds that a substantive due process claim does not exist in this case and that no interest protected by a fundamental right is implicated. The court will DISMISS WITH PREJUDICE Count I of the First Amended Complaint, alleging "Violation for 42 U.S.C. § 1983 - Denial of Substantive Due Process."

### B.  Procedural Due Process

In Count Two of the First Amended Complaint, Plaintiffs assert that "Defendants denied Plaintiffs their right to procedural due process by requiring them to submit to unlawful hearings, refusing to approve or reject their submissions, and denying them the normal and regular process afforded under their own ordinances." (Amend. Compl. doc. 14, at 14). Defendants respond that they provided Plaintiffs with noticed hearings on their proposed development with adequate opportunities to be heard.

In the Eleventh Circuit, "a § 1983 claim alleging the denial of procedural due process requires proof of three elements: (1) a deprivation of constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1148-49 (11th Cir. 2009) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). "[A] procedural deprivation may be cured by providing a later procedural remedy." *Sullivan Props. v. City of Winter Springs*, 899 F. Supp. 587, 594 (M.D. Fla. 1995)

14

(quoting *McKinney*, 20 F.3d at 1557).  According to the Eleventh Circuit,

> only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.  It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim.

*Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (footnote and quotation omitted).  "This rule ... recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts – before being subjected to a claim alleging a procedural due process violation."  *Id.* (quotation omitted).

Thus, the Eleventh Circuit has acknowledged time and time again that the procedural due process "a state provides is not only that employed by the board, agency, other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked."  *Horton v. Bd. of County Comm'rs*, 202 F. 3d 1297, 1300 (11th Cir. 2000); *see also Bass v. Perrin,* 170 F.3d 1312, 1319 (11th Cir. 1999); *Harris v. Bd. of Educ.*, 105 F.3d 591, 596 (11th Cir. 1997); *McKinney,* 20 F.3d at 1561-65.  If the state provided adequate remedies and  "the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process."  *Cotton*, 216 F.3d at 1331.

Plaintiffs fail to state a claim for violation of their rights to procedural due process.  In the First Amended Complaint, their assertions of due process violations focus solely on the City's initial procedural deficiencies in ruling on their land-use requests.  However, the First Amended Complaint does not proceed to allege that the State of Alabama failed to provide adequate

15

remedies for the City's initial alleged procedural deficiencies, as the Eleventh Circuit requires. Neither do Plaintiffs' briefs offer any argument that addresses the adequacy or availability of subsequent remedies.

In fact, the First Amended Complaint states that Plaintiffs affirmatively aborted the procedural process, withdrawing their development proposal plan (Amend. Compl. doc. 14, ¶ 36) and building permit application (Amend. Compl. doc. 14, ¶¶ 50 & 52). Those withdrawals ensured that no City entity made an official decision on Plaintiffs' building project applications and consequently, prevented the city or state from being able to remedy any procedural deficiencies in the decisions. Having ensured that no decision existed to appeal or otherwise remedy, Plaintiffs cannot now complain of an inadequate procedural remedy process.

While Plaintiffs claim to have withdrawn the building permit because "it was futile to pursue a building permit any further," (Amend. Compl. doc. 14, ¶51), this assertion reveals a misunderstanding of procedural due process. In focusing on the futility of the initial land-use application process, Plaintiffs appear to assume that the constitutional violation occurred when the City allegedly mishandled their land use requests. However, Eleventh Circuit law holds that a procedural due process violation occurs not at the point of the original procedural deprivation but rather at the point the state fails "to provide adequate procedures to remedy the otherwise procedurally flawed deprivation." *Cotton*, 216 F.3d at 1331. Plaintiffs' failure to plead this second step – the State's failure to provide adequate remedies – dooms their claim; Count Two does not adequately state a claim for violation of procedural due process. Accordingly, the court will DISMISS WITH PREJUDICE Count Two of the First Amended Complaint.

### C. Equal Protection

In Count Three of their First Amended Complaint, Plaintiffs assert that Defendants violated Plaintiffs' rights to equal protection under color of state law, intentionally singling them out for different treatment than others who were similarly situated.  In their motion to dismiss, Defendants insist that Count Three fails to meet the pleading standards that the Supreme Court enunciated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition to objecting to conclusory statements and formulaic recitations of the equal protection elements, Defendants insist that the First Amended Complaint does not adequately identify the different treatment Plaintiffs received or the unnamed property they claim is similarly situated.

The Eleventh Circuit has acknowledged that "the Equal Protection Clause requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006).  In 2000, the Supreme Court recognized the viability of  "a class of one claim ... where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  To sufficiently state an equal protection "class of one" claim in a qualified immunity case, a plaintiff must allege that the "defendants intentionally treated [him] differently from others who were *similarly* situated" and that "there was no rational basis for the disparate treatment."  *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (emphasis in original).

In the instant case, the First Amended Complaint's Count Three merely makes conclusory assertions, reciting the elements of an equal protection claim without stating specific facts to support those elements.  However, the introductory fact section includes the following

17

statements:

> 53.  The actions taken by the Defendants herein were arbitrary, capricious, lacked any rational basis and were not related to any legitimate governmental purpose.

> 54.  There is another apartment project which was approved by the City which was similarly related to the Plaintiffs' property.  This project contained approximately 326 apartment units and is located less than ½ of a mile from the Plaintiffs' property on the same road.  This project was not subjected to the harassing abuses as was the Plaintiffs'.

> 55.  The City refused to permit the Plaintiffs to proceed with their project, applying an obscure provision of the Standard Fire Code which it interpreted to mean that the Plaintiffs would be required to provide two entrances and exits to their project, which provision the City had never applied to any project in the City before or since.

(Amend. Compl. doc. 14, ¶¶ 54-55).

The court finds that Plaintiffs' First Amended Complaint states an equal protection claim against the City of Alabaster sufficient to withstand a motion to dismiss.  Accordingly, the court will DENY the motion with respect to Count Three, to the extent that it states an equal protection claim against the City of Alabaster.  The court notes that no heightened pleading requirement applies to equal protection claims against the City itself, and will address whether Count Three states a claim against Defendant Frings – who has raised qualified immunity – at a later point in this opinion.  Despite its ruling denying the motion to dismiss on Count Three, the court reiterates the disinclination of federal courts to sit as zoning boards of review.

### D.  Claims against Defendant Frings

The First Amended Complaint's section entitled "Statement of the Parties," does not specify in what capacity Plaintiffs bring this suit against Mayor David Frings.  Counts One through Three simply assert that "Defendants" violated certain Constitutional rights; those counts

do not further identify Defendants or state in what capacity Defendants are being sued.  However, Count Four, titled "Violations of Constitutionally Protected Rights by the Individual Defendants," states that Plaintiffs bring claims against the individual Defendants, including Defendant Frings, for committing acts "individually and in their official capacities" that deprived Plaintiffs of their civil and Constitutional rights.  (Amend. Compl. doc. 14 ¶ 73).  Because the court has dismissed Defendant Workman as a party, Defendant Frings is the only remaining individual Defendant and the court will proceed to address the claims against him.

1.  Official Capacity Claims

Defendants move to dismiss the official capacity claims against Mayor Frings, arguing that claims asserted against a mayor in that capacity for money damages are redundant and indistinguishable from those asserted against the city.  The court notes that Plaintiffs have sued Mayor Frings for money damages and not injunctive relief. This court agrees with Defendants and will DISMISS WITH PREJUDICE those official-capacity claims.  *See Kentucky v. Graham*, 473 U.S. 159, 166-67 & n. 14 (1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Clifton v. Ga. Merit System*, 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007) (dismissing as redundant claims against individually named defendants in their official capacities).

2.  Individual Capacity Claim - Equal Protection

Regarding the Section 1983 claims asserted against him in his individual capacity, Defendant Frings claims entitlement to qualified immunity.  Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity *unless* the official violates "clearly established statutory or constitutional rights of which a reasonable

19

person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law . . . ." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotations omitted).  This court recognizes that "[b]ecause qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Id*. (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

In their brief, Defendants object to the lack of specificity of the pleadings asserting claims against Defendant Frings.  Although Defendants do not refer to any heightened pleading requirements for 42 U.S.C. § 1983 actions, this court acknowledges that, in the Eleventh Circuit, heightened pleading standards apply to § 1983 allegations when challenged upon a Rule 12(b)(6) motion by a Defendant who may be entitled to qualified immunity. As the Court of Appeals explained earlier this year, to satisfy the heightened pleading requirement in a qualified immunity context, a plaintiff must plead only "'some factual detail' from which the court may determine whether Defendants' alleged actions violated a clearly established constitutional right." *Amnesty Int'l.,* 559 F.3d at 1180 .  The complaint should specify "what alleged rights were violated," "which of [the defendant's] actions allegedly violated those rights" and provide enough information for the court to determine "whether those rights were clearly established when the[ ] incidents occurred." *Id.*

Because of this court's determinations that Counts One (Substantive Due Process) and Two

(Procedural Due Process) are due to be dismissed, the court will only address whether Counts Three and Four comply with the heightened pleading standards as to Plaintiffs' claims against Defendant Frings.  As noted previously, to state an equal protection claim based on the application of facially neutral regulations, whether under traditional equal protection jurisprudence or under a "class of one claim," plaintiffs must first allege that a particular defendant intentionally treated them differently from other similarly situated persons.  *See, e.g.*, *Griffin* , 496 F.3d at 1202; *Campbell*, 434 F.3d at 1314.   Because "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause," *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987), "a showing that two projects were similarly situated requires some specificity."  *Campbell*, 434 F.3d at 1314.

The First Amended Complaint in the instant case includes the following statements:

> 54.  There is another project which was approved by the City which was similarly related to the Plaintiffs' property.  This project contained approximately 326 apartment dwelling units and is located less than ½ of a mile from the Plaintiffs' property on the same road.  This project was not subjected to the harassing abuses as was the Plaintiffs'.

> 55.  The City refused to permit the Plaintiffs to proceed with their project, applying an obscure provision of the Standard Fire Code which it interpreted to mean that the Plaintiffs would be required to provide two entrances and exits to their project, which provision the City had never applied to any project in the City before or since.

> 67.  Plaintiffs were intentionally singled out for different treatment than others who were similarly situated.

> 69.  Defendants violated Plaintiffs' rights to property, due process, civil rights and equal protection under color of state law.

> 71.  As a proximate consequence of Defendants' actions, Plaintiffs have been deprived of their constitutionally protected right to equal protection....

> 73. The Defendants, through their acts, individually and in their official capacities, formulated a public policy on behalf of the City of Alabaster by which Plaintiffs would be targeted for discrimination and deprivation of their civil and constitutional rights.

(Amend. Compl. doc. 14).

These paragraphs are not a model of specificity.  Paragraph 54 fails to state the name or address of the other project or the date of its approval.  And, even though it claims that "the City" approved that other project, without a date or more information about that approval process, the court has no way of determining whether Defendant Frings was Mayor at the time, sat on the board that approved the project, or otherwise had any control over the project's approval. Paragraph 55 levels a strong accusation that "the City" applied the Standard Fire Code to Plaintiffs' project for the first and only time in the City's history, but neither that paragraph nor any other in the First Amended Complaint specifies that Defendant Frings was involved in that decision.  Paragraph 67 uses the passive voice and fails to name the person who intentionally singled Plaintiffs out for unequal treatment; in any event, this conclusory statement does not specify that Defendant Frings did so.  Paragraphs 71 and 73 state in a conclusory manner that "Defendants'" acts, actions, and public policies deprived Plaintiffs of their rights to equal protection, but they do not specify any acts, actions, or public policies by Defendant Frings.

In analyzing whether these deficiencies in the First Amended Complaint cause it to fall short of the heightened pleading standard, the court turns to Eleventh Circuit case law.  In *GJR Investments, Inc. v. County of Escambia*, the plaintiff similarly alleged that the county improperly applied zoning regulations in denying it a permit to develop a certain parcel of land, and it brought, among other claims,  a Section 1983 claim for violation of its rights to equal protection.

132 F.3d 1359 (11th Cir. 1998). Reversing the district court's denial of defendant's motion to dismiss where defendant had raised the defense of qualified immunity, the Eleventh Circuit noted the complaint's vague allegations that "nameless, faceless 'other' permit applicants were given better treatment" and found that the district court was too lenient with the shotgun complaint in light of the heightened pleading requirement. *Id.* at 1367-1368.  *See also Griffin*, 496 F.3d at 1205 (citing *GJR* with approval as an example of a case when an equal protection claim on behalf of a "class of one" would not pass scrutiny at the motion to dismiss stage).

The Eleventh Circuit imposes a heightened pleading standard in Section 1983 cases for a reason.  Qualified immunity protects officials "not just from liability but from suit and its attendant burdens, allowing them to perform their official functions without threat of retaliatory nuisance suits."  *GJR Invs.,* 132 F.3d at 1369.  "[T]he defense of qualified immunity should be resolved at the earliest possible procedural moment."  *Amnesty In'l.,* 559 F.3d at 1179.   For the immunity protection to be meaningful, courts must be able to determine from the complaints whether the immunity applies, or potentially applies, but they cannot do so absent some specificity in the pleadings.

Plaintiffs' First Amended Complaint in the instant case illustrates the problem: as written, the court cannot determine whether Mayor Frings had any specific involvement in the decisions made on Plaintiffs' land use requests or in the decisions on the unnamed other project.  Further, the Amended Complaint does not otherwise provide the court with enough specificity about the other project to satisfy Plaintiffs' obligation to meet the "similarly situated" pleading requirement.  If the court accepted the vague allegations as sufficient, "Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of unqualified

liability. . . ." *GJR Invs.,* 132 F.3d 1359 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  This court will not ignore the Eleventh Circuit's heightened pleading standard for § 1983 cases where qualified immunity is implicated and will not divine an equal protection claim against Defendant Frings where none is specifically pled.  The court notes that Plaintiffs have already amended their Complaint once, and that Defendants have filed two motions to dismiss with supporting briefs, one addressing each Complaint.

Accordingly, the court finds that the equal protection claim against Defendant Frings does not meet the heightened pleading standard; it will DISMISS WITH PREJUDICE claims asserted against Defendant Frings in Counts Three and Four for alleged violations of Plaintiffs' equal protection rights.

3.  Other Individual Capacity Claims

In Count Four of the First Amended Complaint, Plaintiffs assert that Defendant Frings "deprived the Plaintiffs of their protected constitutional rights" and proceed, in another paragraph, to refer specifically to "their constitutional rights to equal protection."  (Amend. Compl. doc. 14, ¶¶ 72, 74).  The court has addressed and dismissed Plaintiffs' equal protection claims against Defendant Frings, and has addressed and dismissed the Due Process claims against *all* Defendants.   To the extent that Plaintiffs may have attempted to assert that Defendant Frings violated any other constitutional rights, the court finds that those assertions fail to meet the Eleventh Circuit's heightened pleading standards or, for that matter, the requirements of F.R.C.P. 8.

In light of this ruling, no claims remain against Defendant Frings, and the court will DISMISS WITH PREJUDICE Defendant Frings as a party Defendant.

## V.  CONCLUSION

In summary, the court finds

- that a claim for the violation of Plaintiffs' right to Substantive Due Process does not exist in the case, and thus, it will GRANT the motion regarding Count One of the First Amended Complaint, DISMISSING that count WITH PREJUDICE;

- that Count Two of the First Amended Complaint does not state a claim for the violation of Procedural Due Process, and thus, it will GRANT the motion as to Count Two, DISMISSING that count WITH PREJUDICE;

- that Count Three of the First Amended Complaint states a claim against the City of Alabaster for the violation of equal protection, and thus, it will DENY the motion as to the claims in Count Three asserted against the City;

- that Count Three of the First Amended Complaint does not meet the heightened pleading standard regarding its claims against Defendant Frings for violation of Plaintiffs' right to equal protection, and thus, it will GRANT the motion as to the claim in Count Three asserted against Defendant Frings, DISMISSING that claim WITH PREJUDICE;

- that the claims asserted in Count Four of the First Amended Complaint do not meet the heightened pleading standard, and thus, the court will GRANT the motion as to all claims asserted in Count Four, DISMISSING that count WITH PREJUDICE and further, DISMISSING WITH PREJUDICE Defendant Frings as a party Defendant.

The case will proceed against the City of Alabaster on the claim asserted against it in Count

Three for violation of Plaintiffs' right to equal protection under the laws.

Dated this 3rd day of December, 2009.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE